IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| RUSTON PANABAKER, SHERI PANABAKER, JOHN J HUTSON, JENNIFER L HUTSON, DAVID T JOHNSON, SUSANNA JOHNSON, ROBERTA THOMPSON, MATTHEW BERENSON, MARK D TAYLOR, and PAULA BLANCHET, | Case No.: 3:24-cv-00901-AN |
| Plaintiffs, | OPINION AND ORDER |
| v. | |
| CITY OF HOOD RIVER, | |
| Defendant. | |

Plaintiffs Ruston Panabaker, Sheri Panabaker, John Hutson, Jennifer Hutson, David Johnson, Susanna Johnson, Roberta Thompson, Matthew Berenson, Mark Taylor, and Paula Blanchet bring this action against defendant City of Hood River ("City") alleging violations of the Dormant Commerce Clause. The parties have filed cross-motions for summary judgment. The Court held oral argument on March 21, 2025. For the reasons that follow, plaintiffs' motion is DENIED, and defendant's motion is GRANTED.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that there is no genuine issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). "Material facts are those which might affect the outcome of the suit." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Materiality is determined using substantive law. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When a moving party demonstrates the absence of a genuine dispute as to any material

fact, the nonmoving party that bears the burden at trial must show in response that there is evidence creating a genuine dispute as to any material fact. *Rivera*, 395 F.3d at 1146 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.

## BACKGROUND

Plaintiffs are homeowners in Hood River who purchased their homes prior to 2016. Am. Compl., ECF [12], ¶ 1. They "spend[] substantial time in Hood River themselves" and rent out their properties to vacationers in Hood River. *Id.* Ruston Panabaker and Sheri Panabaker are residents of Washington who own homes in Washington and Hood River and began renting their property in Hood River for vacation home rental use around 2012. *Id.* ¶ 11. John Hutson and Jennifer Hutson are residents of California who own homes in Santa Cruz and Hood River and began renting their Hood River property for vacation home rental use around 2012. *Id.* ¶ 12. David Johnson and Susanna Johnson are residents of Washington who own homes in Washington and Hood River and began renting their Hood River property for vacation home rental use around 2009. *Id.* ¶ 13. Thompson is a resident of California who owns homes in Santa Cruz and Hood River and began renting her Hood River property for vacation home rental use in 2004. *Id.* ¶ 14. Berenson is a resident of Alaska who owns property in Anchorage and Hood River and began renting his Hood River property for vacation home rental use in 2009. *Id.* ¶ 15. Taylor and Blanchet are residents of British Columbia who own property in British Columbia and Hood River and began renting the property as a vacation home rental in the summer and winter in "the late 1990s." *Id.* ¶ 16. All plaintiffs held short-term rental licenses to rent out their homes until January 2024. They desire to continue renting out their homes for vacation rental use but allege that they cannot comply with city ordinances relating to short-term rentals. *Id.* ¶¶ 11-16.

As relevant to this action, Ordinance 2026, which took effect in October 2016, amended Hood River's existing zoning ordinance to add provision 17.04.155, "Hosted Homeshares and Vacation

Home Rentals." Brann Decl., ECF [17], Ex. 1 ("Ordinance 2026"), at 15 (all references to ECF pagination). The provision permits "dwelling units" to be used as "hosted homeshares or vacation home rentals" in residential zones with restrictions. A hosted homeshare is the "transient rental of a portion of a dwelling while the homeowner is present," while a vacation home rental is "the transient rental of an entire dwelling unit." *Id.* A person operating a homeshare or vacation home rental must have a short-term rental operating license. *Id.* A homeshare or vacation home rental is only permitted in residential zones "when it is an accessory use to the existing and continued residential use of a dwelling as the primary residence of the property owner" and must be limited to ninety days per calendar year. *Id.* at 15-16. Ordinance 2026 was implemented to "create a desired balance between the quality of life of this community and economic health of the city" by ensuring sufficient housing for workers and to "preserve and promote the city's 'quality of life' including small town atmosphere [and] family-oriented community" by reducing the "clustering of vacation rentals." *Id.* at 1.

For nonconforming homeshares and vacation home rentals that existed at the time of the passage of the ordinance, the City provided five years to come into compliance with parking requirements and seven years to come until compliance with all other requirements, including the residential use and ninety-day limits. *Id.* at 16. As a result, existing homeshares and vacation rentals had until October 2023 to conform with the requirements.

Ordinance 2028 took effect in November 2016. As relevant to this action, that ordinance amended the Hood River Municipal Code to add Chapter 5.10, which governs short-term rental operating licenses. Brann Decl. Ex. 2 ("Ordinance 2028"), at 2 (all references to ECF pagination). It provides the terms of annual short-term rental operating licenses and the criteria for approval. As relevant to this action, Ordinance 2028 requires an applicant to provide proof of residential use as "established through its continued use as the primary residence of the property owner." *Id.* at 8. To prove residential use, an applicant may use a copy of their voter registration, Oregon Driver's License or Identification Card, or a copy of their federal income tax return from the previous tax year to show that the dwelling is their primary residence. *Id.* Ordinance 2028 has the same stated justifications as Ordinance 2026. *See id.* at 1.

In October 2023, the City informed nonconforming property owners "that their licenses would not be renewed and that they must cease operation." Am. Compl. ¶ 38. Plaintiffs allege that their licenses were not renewed because they do not meet the residency requirement. *Id.* ¶ 37.

Ordinance 2083 amended Chapter 5.10 on July 22, 2024, to clarify the licensing requirement of proof of primary residential use for short-term rentals. Brann Decl. Ex. 3 ("Ordinance 2083"), at 4 (all references to ECF pagination). Ordinance 2083 was implemented to "increase the number of dwellings in the City used for long-term tenancy and to provide reasonable opportunities for homeowners to satisfy the 'primary residence' requirement for [short-term rental] licenses." *Id.* at 2. It sets forth that the phrase "primary residence of the property owner" shall be interpreted to include "the title owner or a long-term tenant who resides on the property under a residential lease with a term of at least 12-months." *Id.* The City stated that the ordinance was "necessary for the immediate preservation of public peace, health, and safety of the City of Hood River, to alleviate hardship on out of state property owners who wish to short-term rent their Hood River dwellings, to adhere to constitutional requirements, and to take full advantage of the benefits of increasing the opportunities of long-term tenancy in dwellings that heretofore have only been available for short-term rental." *Id.*

Plaintiffs first filed this action on June 5, 2024, and amended the complaint on July 31, 2024, after Ordinance 2083 was implemented. Plaintiffs allege that Ordinances 2026, 2028, and 2083 (collectively, the "Ordinances") completely exclude out-of-state homeowners from offering vacation home rentals in Hood River and reserves the market for in-state owners. Am. Compl. ¶ 42. This is because, plaintiffs allege, the plain language of Ordinance 2083 only permits out-of-state owners to participate in the rental market if they convert their homes to hosted homeshares, with a long-term tenant also present in the home. *Id.* ¶ 41. Plaintiffs allege that the Ordinances discriminate on their face against out-of-state homeowners who desire to rent out their homes as vacation home rentals in violation of the Dormant Commerce Clause. *Id.* ¶¶ 43-54. They seek an order declaring Ordinances 2026 and 2028 unconstitutional on their face and an order enjoining enforcement of the Ordinances. *Id.* ¶ 55.

Plaintiffs filed a motion for summary judgment on August 16, 2024. Defendant filed a

cross-motion for summary judgment on September 13, 2024.[1]  The Court heard oral argument on March 21, 2025.

## DISCUSSION

Plaintiffs argue that Ordinances 2026 and 2028 violate the Dormant Commerce Clause by directly discriminating against out-of-state property owners who wish to participate in the vacation home rental market and that Ordinance 2083's amendment to the primary residence requirement does not cure the violation.  Pls. Mot. Summ. J. ("Pls. Mot."), ECF [16], at 2.  Defendants maintain that it is established law in this Circuit that a short-term rental licensing scheme that permits someone other than the owner to satisfy a residency requirement does not violate the Dormant Commerce Clause.  Def. Resp., ECF [26], at 2.

### A.    Dormant Commerce Clause

The Commerce Clause of the United States Constitution gives Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes[.]"  U.S. Const. art. I, § 8, cl. 3.  "'Although the Commerce Clause is by its text an affirmative grant of power to Congress to regulate interstate and foreign commerce, the Clause has long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce.'"  *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 947 (9th Cir. 2013) (quoting *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir.2012)).  This negative aspect, referred to as the Dormant Commerce Clause, "denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce."  *Or. Waste Sys., Inc. v. Dep't of Env't Quality of State of Or.*, 511 U.S. 93, 98 (1994).  "The primary purpose of the dormant Commerce Clause is to prohibit 'statutes that discriminate against interstate commerce' by providing

---

[1] As an initial matter, plaintiffs argue that defendant's motion must be denied because defendant "must do more than incorporate by reference its opposition to [p]laintiffs' Motion for Summary Judgment to meet its burden under Rule 56." Pls. Resp., ECF [32], at 5.  Because both parties address the same legal issue in their filings, the Court declines to put form over substance and will not deny defendant's motion on this basis.  *See, e.g.*, *Am. Motorists Ins. Co. v. Fireman's Fund Ins. Co.*, No. C 05-01030 CRB, 2007 WL 735767, at *1 & n.1 (N.D. Cal. Mar. 7, 2007) (granting the defendant's cross-motion for summary judgment "in which [it] simply incorporate[d] [its] opposition to [plaintiff]'s original motion [for summary judgment].").

benefits to 'in-state economic interests' while 'burdening out-of-state competitors.'" *Ass'n des Eleveurs de Canards et d'Oies du Quebec*, 729 F.3d at 947 (quoting *Nat'l Ass'n of Optometrists & Opticians*, 682 F.3d at 1148).

When reviewing a challenge to local regulations under the Dormant Commerce Clause, courts "follow a two-tiered approach:"

> "[1] When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry. [2] When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits."

*Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 444 (9th Cir. 2019) (alterations in original) (quoting *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986)).

**B.    Direct Regulation and Discrimination**

"Direct regulation occurs when a state law directly affects transactions that take place across state lines or entirely outside of the state's borders." *S.D. Myers, Inc. v. City & Cnty. of San Francisco*, 253 F.3d 461, 467 (9th Cir. 2001) (internal quotation marks and citation omitted). To prevail on a facial challenge to a local regulation, a plaintiff "must meet a high burden of proof; [they] must 'establish that no set of circumstances exists under which the [Ordinance] would be valid. The fact that [the Ordinance] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid.'" *Id.* (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Because this is a high burden, courts "construe the Ordinance narrowly and resolve any ambiguities in favor of the interpretation that most clearly supports constitutionality." *Id.* at 468 (citation omitted). "A discriminatory law is 'virtually per se invalid' . . . and will survive only if it 'advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives[.]'" *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 338 (2008) (quoting *Or. Waste Sys., Inc.*, 511 U.S. at 99).

Discrimination may be on the face of the regulation or in purpose or effect. A local regulation is discriminatory if it "'impose[s] commercial barriers or discriminate[s] against an article of

commerce by reason of its origin or destination out of State.'" *Ass'n des Eleveurs de Canards et d'Oies du Quebec*, 729 F.3d at 948 (quoting *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 390 (1994)). "Conversely, a statute that 'treat[s] all private companies exactly the same' does not discriminate against interstate commerce." *Id.* (alteration in original) (quoting *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 342 (2007)). "The party challenging a regulation bears the burden of establishing that a challenged statute has a discriminatory purpose or effect under the Commerce Clause." *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1097 (9th Cir. 2013) (citing *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979)). The court should "'assume that the objectives articulated by the legislature are actual purposes of the statute, unless an examination of the circumstances forces us to conclude that they could not have been a goal of the legislation.'" *Id.* at 1097-98 (quoting *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 463 n.7 (1981)).

"If a statute discriminates against out-of-state entities on its face, in its purpose, or in its practical effect, it is unconstitutional unless it 'serves a legitimate local purpose, and this purpose could not be served as well by available nondiscriminatory means.'" *Id.* at 1087 (quoting *Maine v. Taylor*, 477 U.S. 131, 138 (1986)).

The Ninth Circuit has provided helpful guidance on determining whether short-term rental licensing schemes violate the Dormant Commerce Clause. In *Rosenblatt v. City of Santa Monica*, the city of Santa Monica implemented a local regulation prohibiting property rentals for thirty days or less, with an exception for homeshares "if 'at least one of the dwelling unit's primary residents lives on-site, in the dwelling unit, throughout the visitors' stay.'" 940 F.3d 439, 450 (9th Cir. 2019) (quoting Santa Monica Mun. Code § 6.20.010(a)). The city sought to preserve its available housing supply, the "character and charm which result, in part, from cultural, ethnic, and economic diversity of its resident population," and a sense of community. *Id.* at 443. The plaintiff sued to enjoin the ordinance, arguing that it violated the Dormant Commerce Clause. *Id.*

At the first tier of analysis, the Ninth Circuit found that the city ordinance did not directly regulate interstate commerce because, although the vast majority of vacation rentals involve an out-of-state

party, the ordinance only regulates conduct within Santa Monica, so effects to out-of-state persons are indirect. *Id.* at 445-46. The court then turned to the question of whether the ordinance directly discriminated against interstate commerce. As relevant to this action, the plaintiff argued that the Santa Monica ordinance discriminated because the residency requirement permitted only Santa Monica residents to engage in short-term rentals. *Id.* at 450. The court rejected that argument. It noted that the ordinance "does not require the primary resident in the dwelling to be the owner of the dwelling" and that an out-of-state owner could "extract economic value from the property" by "rent[ing] out the property on a long-term basis with a condition that one of the rooms be used for the owner's short-term rentals" or "expressly allow the long-term renter to sublet a on a short-term basis in exchange for paying a higher monthly rent." *Id.* at 450-51. The court concluded that, although there was a residency requirement,

> "Santa Monica's ordinance does not prohibit out-of-state property owners from home sharing in their out-of-state homes, nor does it prohibit them from allowing home sharing in their Santa Monica properties. While non-resident property owners cannot personally serve as the primary resident whose presence is required during the home share, that is because they are not similarly situated to the Santa Monica residents who can."

*Id.* at 451.

### 1.    *Regulation*

In this case there is no evidence, and no party meaningfully disputes, that the Ordinances directly regulate interstate commerce. The Ordinances only regulate conduct that occurs within Hood River, so any effects on out-of-state residents are indirect.

### 2.    *Facial Discrimination and Discriminatory Effect*

Plaintiffs argue that the Ordinances discriminate against interstate commerce through their residency requirement. Plaintiffs understand Ordinance 2083 to be intended to correct any potential Dormant Commerce Clause issue and bring the Ordinances in line with those approved in *Rosenblatt* by permitting the "primary residence of the property owner" requirement to be satisfied by a long-term tenant. However, plaintiffs maintain that this was ineffective because if a long-term tenant must be maintained during any short-term rental, that tenant will be on site at all times, effectively making a full vacation home rental impossible and limiting non-resident property owners to hosted homeshares. Pls. Mot. 11-12.

Plaintiffs compare this case to a Fifth Circuit case, *Hignell-Stark v. City of New Orleans*, that found a licensing program for short-term rentals in New Orleans unconstitutional on Dormant Commerce Clause grounds. 46 F.4th 317, 321 (5th Cir. 2022). One term of the licensing program at issue was a requirement that the property be the "owner's primary residence." *Id.* Plaintiffs sued on numerous grounds, including that the residency requirement violated the Dormant Commerce Clause because it discriminated against interstate commerce. *Id.* at 322. The district court found that although the residency requirement discriminated against interstate commerce, it was constitutional because the burden it imposed was not clearly excessive in relation to the putative local benefits. *Hignell-Stark*, 46 F.4th at 322 (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).

The Fifth Circuit reversed, finding that the regulation imposed a burden only on out-of-state owners and thus discriminated against them. The court held that the regulation "doesn't just make it more difficult for [out-of-state owners] to compete in the market for [short-term rentals] in residential neighborhoods; it forbids them from participating altogether." *Id.* at 326. The court then determined that the city had other nondiscriminatory options to serve its interests of "preventing nuisances, promoting affordable housing, and protecting neighborhoods' residential character[;]" it could, according to the court, increase nuisance enforcement, increase nuisance penalties, increases taxes on short-term rentals, or reduce housing regulations to increase supply. *Id.* at 328-29.

Plaintiffs point to a California appellate case in accord with *Hignell-Stark*. In *South Lake Tahoe Property Owners Group v. City of South Lake Tahoe*, out-of-state property owners challenged an ordinance that prohibited short-term or vacation rentals in residential zones and barred the city from issuing any new permits for vacation home rentals except for those in permanent residents' dwellings. 310 Cal. Rptr. 3d 9, 16-17 (Cal. App. 2023), *as modified on denial of reh'g* (July 12, 2023), *rev. denied* (Oct. 11, 2023). The regulation effectively limited short-term vacation rentals in residential zones to persons who lived in the property the majority of the year and claimed a homeowner's property tax exemption. *Id.* at 26. The court found *Hignell-Stark* persuasive and held that plaintiffs had adequately stated a claim that the ordinance discriminated on its face against interstate commerce. *Id.* at 35-36. The court distinguished this

case from *Rosenblatt* because "[u]nlike [the South Lake Tahoe regulation], the Santa Monica ordinance did not require the primary resident of the home-shared dwelling to be the dwelling's owner." *Id.* at 32 (citing *Rosenblatt*, 940 F.3d at 450).

Plaintiff's argument is premised on a constrained and unsupported reading of the Ordinances. As defendant notes, nothing in the Ordinances "prevent[s] an owner from requiring the long-term tenant be vacant for certain specified times as a condition of the long-term lease" or "using a portion of the residence for a long-term tenant while maintaining the rest of the home for [short-term rentals] and vacation use."[2] Def. Resp. 11. The Ordinances do not prohibit out-of-state property owners from participating the vacation home rental market.

Further, the Ordinances apply this requirement equally to in-state and out-of-state owners. If an Oregon resident resides in a different home than their rental property, whether in Hood River or elsewhere in the state, the rental would not be "an accessory use to the existing and continued residential use of a dwelling as the primary residence of the property owner." Ordinance 2026 15-16. As a result, any in-state owner who does not reside in the rental as their primary residence would also be required to secure a long-term tenant in order to participate in the vacation home rental market.

Plaintiffs argue for the first time in their reply that the Ordinances unconstitutionally "require an out-of-state owner to establish itself in Hood River through an in-state resident" in a similar manner as unconstitutional laws that "require an out-of-state business to incorporate an in-state subsidiary to enter a market." Pls. Reply 5. Plaintiffs rely on *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716 (9th Cir. 2017), which is not on point. In that case, the regulation at issue was a prorater law that required anyone acting as a prorater to obtain a prorater license from California while simultaneously stating that prorater licenses "'shall only be issued to a corporation organized under the laws of this State for that purpose.'" *Nationwide Biweekly Admin.*, 873 F.3d at 736 (quoting Cal. Fin. Code § 12200). The Ninth

---

[2] Plaintiffs raise on reply that Oregon Revised Statutes § 90.100(51)(a)(A), which defines "tenant," makes it "unclear, if not doubtful," that a property owner and renter could enter into a lease that permits subletting or requires temporary vacancies. Pls. Reply, ECF [33], at 8. Plaintiffs do not cite any statute or caselaw in support of this argument, and the Court has been unable to locate any.

Circuit found that the law discriminated against interstate commerce because it "require[d] any corporation that wants to engage in a certain kind of business within the state to become a resident." *Id.* The implication of this holding is that a law requiring proraters to obtain a license in California so that they can participate in the California market would have been permissible if it did not also require the prorater company to incorporate within the state. Here, out-of-state residents can participate in the short-term rental market in Hood River by obtaining a license, and they are not required to become residents of Hood River or Oregon to do so. There is thus no compulsion to become a resident.

The Ordinances do not prohibit out-of-state property owners from participating in the short-term rental market, either in the vacation home or hosted homeshare markets. The Ordinances also apply equally to all property owners who do use the property as their primary residence, whether they reside in Hood River, elsewhere in Oregon, or out of state. Accordingly, the Ordinances do not discriminate against out-of-state property owners.

3. *Discriminatory Purpose*

Although plaintiffs do not explicitly raise the argument, they devote two pages of their motion to quoting from testimony of attendees at public hearings regarding the Ordinances, which they argue "demonstrate[s] that the Ordinance was intended to prevent out-of-state individuals from operating [short-term rentals] in Hood River." Pls. Mot. 9. To the extent that plaintiffs raise a discriminatory purpose argument, it is not meritorious. The testimony of non-legislator attendees at public hearings cannot be used to describe the legislative intent of the Ordinances. Absent any evidence to the contrary, the Court must accept the stated intent of the legislature, which is to ensure sufficient housing and maintain the quality of life of the community. These are not discriminatory purposes.

**C.    Substantial Burden**

"If an ordinance regulates evenhandedly with only incidental effects on interstate commerce," the court reaches the second tier of the analysis. *Rosenblatt*, 940 F.3d at 451. At this tier, courts employ what is often referred to as the *Pike* balancing test, which states that "[w]here the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate

commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike*, 397 U.S. at 142. The Ninth Circuit has "explained that under *Pike*, a plaintiff must first show that the statute imposes a substantial burden before the court will 'determine whether the benefits of the challenged laws are illusory.'" *Ass'n des Eleveurs de Canards et d'Oies du Quebec*, 729 F.3d at 951-52 (quoting *Nat'l Ass'n of Optometrists & Opticians*, 682 F.3d 1144 at 1155).

There is limited guidance as to what constitutes a substantial burden because plaintiffs "face a heavy burden" in showing that a statute imposes a substantial burden; "the Supreme Court 'has not invalidated a law under *Pike*' in more than 30 years." *Flynt v. Bonta*, No. 22-16376, 2025 WL 815194, at *10 (9th Cir. Mar. 14, 2025) (quoting *Truesdell v. Friedlander*, 80 F.4th 762, 773 (6th Cir. 2023)). Substantial burdens "generally result from inconsistent regulation of activities that are inherently national or require a uniform system of regulation." *Nat'l Ass'n of Optometrists & Opticians*, 682 F.3d at 1148; *see, e.g.*, *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 129 (1978) (recognizing that a regulation may be invalidated under the Dormant Commerce Clause "when a lack of national uniformity would impede the flow of interstate goods.").

Defendant argues that plaintiff, who bears the burden, has not presented any evidence that the Ordinances impose a burden on interstate commerce. Def. Resp. 17. Plaintiffs argue for the first time on reply that the Ordinances are excessively burdensome because they impose additional costs on out-of-state owners. Plaintiffs note that they may have to enter into leases that specify that a long-term tenant would vacate the property at times to permit short-term rentals, lease their property for longer than a year in order to have a tenant that covers the entirety of the short-term rental license period, negotiate periodic absences, or wait for a tenant to update their identity documents to show proof of residence. Pl. Reply 8-9.

These concerns, at least one of which is based on speculation about how quickly a long-term tenant would update the address on their state license, do not constitute a substantial burden. Out-of-state owners, who already engage possible tenants and negotiate leases regularly as part of their business, face minimal additional requirements to obtain a short-term rental license. Although plaintiffs may prefer

to enter into a shorter lease or avoid negotiations about vacating the property, having to do so does not excessively burden them. *See Int'l Fur Trade Fed'n v. City & Cnty. of San Francisco*, 472 F. Supp. 3d 696, 703 (N.D. Cal. 2020) ("Because [the law] simply precludes a preferred, and perhaps more profitable, method of [doing business], it does not impose a substantial burden[.]").  To the extent that these concerns materialize, they would do so equally, to all persons renting out property in Hood River that is not their primary residence, regardless of their state of residence.  And although plaintiffs may prefer to compete differently to attract tenants, "the dormant Commerce Clause does not guarantee that [market participants] may compete on the terms they find most convenient." *Rocky Mountain Farmers Union*, 730 F.3d at 1092. Although plaintiffs are concerned about the possibility of negotiating a non-standard lease agreement, it does not seem implausible that a long-term tenant might spend 275 days or fewer per year in Hood River, maintaining a home there for the long term, while subletting or otherwise making the home available for the remaining ninety days of the year.  This is, in fact, what every plaintiff in this case does.

Plaintiffs have not met the threshold requirement of showing that the Ordinances impose a substantial burden on interstate commerce.  Even if they had, the alleged burdens are not clearly excessive in relation to the putative benefits.  The Court accepts the explanation provided in the Ordinances that their purpose is to ensure housing supply, promote quality of life, avoid clusters of vacation rentals, and reduce hardship on out-of-state property owners.  These benefits are not "illusory" and are not outweighed by any alleged burdens on plaintiffs.

## CONCLUSION

For the foregoing reasons, plaintiffs' Motion for Summary Judgment, ECF [16], is DENIED, and defendant's Motion for Summary Judgment, ECF [28], is GRANTED.

IT IS SO ORDERED.

DATED this 31st day of March, 2025.

Adrienne Nelson
United States District Judge

13